FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Aug 27 2021

KEVIN P. WEIMER , Clerk

By: Sonya Nuckolls
Deputy Clerk

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

DEMETRICE LEQUESE WEBB

**CRIMINAL COMPLAINT**

Case Number: 1:21-MJ-0840

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about August 27, 2021 in DeKalb County, in the Northern District of Georgia, Defendant DEMETRICE LEQUESE WEBB and others did, knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other to violate Title 21, United States Code, Section 841(a)(1), that is, to possess 100 grams or more of a mixture and substance containing a detectable amount of heroin, a schedule I controlled substance, and N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide (fentanyl), a schedule II controlled substance

in violation of Title 21, United States Code, Section(s) 846, 841(a)(1), and 841(b)(1)(B).

I further state that I am a Special Agent with the Department of Homeland Security and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

*Antonio P. Edwards*
Signature of Complainant
Antonio P. Edwards

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

August 27, 2021                           at    Atlanta, Georgia
Date                                                  City and State

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE                   *Russell G. Vineyard*
Name and Title of Judicial Officer                    Signature of Judicial Officer
AUSA Rebeca M. Ojeda                                 Issued Pursuant to Federal Rule of Criminal Procedure
rebeca.ojeda@usdoj.gov                               4.1

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Antonio P. Edwards, a Special Agent of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) depose and say under penalty of perjury:

### PURPOSE

1.      I submit this affidavit in support of a criminal complaint as there is probable cause to believe that on or about July 27, 2021, in the Northern District of Georgia, Demetrius Lequese WEBB and others, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other to violate of Title 21, United States Code, Section 841(a)(1), that is to knowingly and intentionally possess with intent to distribute a mixture and substance containing 100 grams or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and/or N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide, a Schedule II controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846.

### AGENT BACKGROUND

2.      I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have been employed by HSI since May of 2006. I am currently assigned to the Office of the Special Agent in Charge, Atlanta, Georgia, Strike Force Narcotics. I am

investigating the trafficking of narcotics, 21 U.S. Code § 841 and §846, involving the conspiracy to traffic or distribute schedule II narcotics via a UPS parcel to 1634 Austin Meadows Drive, Decatur, Georgia 30032, in the Northern District of Georgia. Since joining HSI, I have participated in investigations of international narcotics trafficking organizations engaged in the unlawful importation, transportation, and distribution of controlled substances, and in related money laundering activities. I have also become familiar with and utilized a wide variety of criminal investigative techniques.

3. Prior to working for HSI, from March 2008 to March 2012, I served as a Special Agent for the United States Army Criminal Investigation Command, Computer Crime Investigative Unit (CCIU), Fort Belvoir, Virginia. While employed at CCIU, I was responsible for the investigation of violations of federal law, including computer intrusions and other types of malicious computer activity directed against the U.S. Army.

4. From November 2007 to November 2008, I served as a Special Agent with the Department of Commerce, Bureau of Industry and Security (BIS), Office of Export Enforcement. At BIS, I was responsible for enforcing federal laws relating to the unlawful export of goods and technology from the United States.

5. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program. Additionally, I received a Juris Doctorate from Indiana University in May 2003, I was subsequently admitted to the Indiana bar, and from August 2003 to October 2006 I was employed as a Deputy Prosecutor for Morgan County. Additionally, I served as a Judge Advocate General in the U.S. Army National Guard, District of Columbia, for approximately 11 years.

6. As a Special Agent, I investigate violations of federal drug laws and related offenses, including, but not limited to, violations of Title 21, United States Code, Sections 841, 843, 846, and Title 18, United States Code, Sections 2, 1956, and 1957.

7. During my law enforcement career, I have participated in numerous drug trafficking investigations involving various types of drugs, including, cocaine, fentanyl, methamphetamine, opiates, heroin, marijuana, and synthetic marijuana. I am personally familiar with and have used all routine methods of investigation, including, but not limited to, visual surveillance, electronic surveillance, informant and witness interviews, interrogation, controlled deliveries, and undercover operations.

8. Based on my training and experience in the investigation of drug traffickers, and based upon interviews I have participated in with defendants, informants, and other witnesses and participants in drug trafficking activity, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs; their use of cellular devices, computers, emails, and texts; and their use of numerical codes and code words to conduct their transactions. I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, but not limited to, the use of couriers to transport controlled substances.

9. Based on my training and experiences in this investigation and others, I know drug traffickers often use cellular telephones to arrange the distribution of narcotics and coordinate the distribution of the proceeds of their sale. And, drug trafficking is often furthered by utilizing multiple cellular phones, multiple insulated contacts, pre-paid cellular phones, voice over internet protocol phones, and phones designated to be used only for "incoming" or "outgoing" calls, which

is also known as compartmentalization. The use of the telephones in this manner is designed to help avoid detection by law enforcement.

10. In addition, I have consulted extensively with other experienced agents regarding drug trafficking activities. As a result, the knowledge that I have obtained during my law enforcement career has been enhanced by other law enforcement agents with experience conducting drug investigations.

11. Through my training and experience, I have learned that drug traffickers employ several techniques, either solely or in combination, to aid their business, or to avoid detection by law enforcement. These techniques include the keeping of ledger books, telephone books, receipts, drug customer lists, photographs, and other papers that identify conspirators and their residences. These records often relate to the importation, transportation, purchasing, and distribution of illegal drugs and the proceeds derived from the sale of these substances. These individuals routinely maintain handwritten business records which track the flow of both illegal drugs and currency derived from their sales.

12. I have also observed that drug traffickers commonly secret contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences and stash houses, for easy access and to conceal such items from law enforcement authorities. Persons involved in drug trafficking have in the past concealed in their residence caches of illegal drugs, currency, jewelry, automobile titles, deeds of trust for real property, and other items of value which are the proceeds of prior illegal drug transactions. Additionally, documents often exist in these same places that contain evidence of financial transactions relating to obtaining, transferring, secreting or engaging in the trafficking of illegal drugs and other illegal activities.

13. I also know that drug traffickers generate substantial profits as a result of illegal drug dealing, which the courts have recognized as probative evidence of crimes motivated by greed, in particular, trafficking in narcotics and dangerous drugs. These persons often maintain or handle large amounts of United States currency to operate and finance their on-going drug distribution enterprise. These persons often purchase and/or title and/or rent homes, buildings, and vehicles, not only in their names, but in fictitious names, aliases, or in the names of relatives, associates, or business entities to avoid detection by government agencies and to avoid identification of assets.

14. I also have found that these individuals use sophisticated communications networks, e.g. telecommunications systems, cellular telephones, pagers, facsimile machines, laptop and desktop computers, emails and instant messenger programs, financial spreadsheet computer programs, computer address books, and other computer programs to facilitate their various illicit schemes. I have also found that these individuals keep records of the use of these networks and programs, such as bills or receipts. I have found that these receipts indicate communication with co-conspirators involved in trafficking narcotics.

15. I also know that drug traffickers commonly have in their possession, on their person, and/or at their residences and places of business, various types of firearms. These types of firearms include, but are not limited to, handguns, machine guns, rifles, shotguns, and other weapons or destructive devices. Such firearms and devices are used to protect and secure the drug traffickers' property and currency.

## SOURCES OF INFORMATION

16.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The information contained in this affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and the review of documents and records.

17.     The facts related in this affidavit do not reflect the totality of information known to me or other officers, merely the amount needed to establish probable cause. I do not rely upon facts not set forth herein in reaching my conclusion that a warrant should be issued, nor do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit in support of the application for a search warrant.

## PROBABLE CAUSE

18.     On August 27, 2021, I, Special Agent (SA) Antonio P. Edwards of Homeland Security Investigations (HSI), Immigration and Customs Enforcement (ICE), Strike Force Narcotics (SFN) in Atlanta Georgia and other agents executed a federal search warrant on the residence of WEBB, at 4893 Longview Run, Decatur Georgia 30035. The search warrant resulted in the identification and seizure of 894.3 grams of a fentanyl/heroin mixture, 69.5 grams of crack cocaine, 53.5 grams of powder cocaine, 13.87 kilograms of marijuana, drug processing chemicals, and equipment such as scales and plastic bags. The chemicals were located in the far-right cabinet in the corner of the kitchen adjacent to the microwave. The narcotics and equipment such as scales and bags were hidden behind kitchen cabinet doors.

19. Agents also recovered three handguns and one rifle from the residence, including one firearm from WEBB's bed.

20. The search also resulted in the identification and seizure of a one-kilogram press, which is involved in the pressing and marking of narcotics into kilogram bricks. The press was located in the garage of the residence where WEBB also kept two large rottweiler canines in kennels, which were positioned in the garage in a manner to allow them to guard the press. A Lamborghini that was not properly registered and did not have appropriate insurance was also located in the garage.

21. Additionally, agents located numerous battery systems that operate traps, which are commonly used to hide narcotics and narcotics proceeds in a vehicle. One of these traps was found in the residence, inside a shipping container addressed to WEBB. Additionally, agents identified a trap operation battery system installed in a blue Honda Accord belonging to WEBB.

22. Agents mirandized WEBB and conducted an interview incident to the search. During the interview, WEBB guided agents to the location of a drug processing area in the kitchen of the residence and WEBB physically identified the seized cocaine, crack, and marijuana in the kitchen area as "my stuff". WEBB also stated he owned the four seized firearms.

23. WEBB informed agents that his income is generated primarily from gambling. WEBB also stated he is running a courier business but that it is "not doing a lot of business". During the search, agents identified records from Dekalb County Georgia Government directed to Demetrius WEBB at DW Courier Services LLC.

24. Research revealed that the phone number (470) 880-1521, which was used

as recently as July 2021 to communicate with a cooperating defendant to coordinate narcotics and currency deliveries, has been reassigned to DW Courier Service LLC.

## **CONCLUSION**

25. Based on the foregoing, my training and experience, and information obtained through the investigation to date, I respectfully submit there is probable cause to believe that on or about August 27, 2021, in the Northern District of Georgia, Demetrius Lequese WEBB and others, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other to violate of Title 21, United States Code, Section 841(a)(1), that is to knowingly and intentionally possess with intent to distribute a mixture and substance containing, 100 grams or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and/or N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide, a Schedule II controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846.

26. I submit that this affidavit supports probable cause to find that, Demetrius Lequese WEBB violated Title 21, United States Code, Section 841(a), Section 841(b)(1)(B), and 846.